UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>J&J KOREA, INC.,<br><br>　　　Defendant. | §<br>§<br>§<br>§ Case No: 1:23-cr-00073-RP<br>§<br>§<br>§<br>§<br>§ |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, files this Sentencing Memorandum in advance of the sentencing of Defendant J&J Korea, Inc., which is a foreign subsidiary of J&J Maintenance, Inc. d/b/a J&J Worldwide Services ("J&J Worldwide"). On May 10, 2023, the Defendant, through its corporate representative, pleaded guilty pursuant to a Plea Agreement under Rule 11(c)(1)(C) to an information charging the company with one count of conspiring to restrain trade in violation of 15 U.S.C. § 1, and one count of wire fraud in violation of 18 U.S.C. § 1343. The United States respectfully requests that the Court sentence the Defendant in accordance with the Plea Agreement to a $5,000,000 criminal fine, $3,600,000 in restitution, a special assessment of $800, and no probation. *See* Doc. No. 13. The proposed sentence is a substantively reasonable resolution that would require the Defendant to pay restitution to the United States out of its ill-gotten gains and pay a substantial criminal fine that is within the range specified under the U.S. Sentencing Guidelines. The resolution also permits the United States to advance its investigation while continuing to hold accountable those individuals who are responsible for the relevant conduct.

J&J Worldwide is not charged in this case, but it is a signatory to the Plea Agreement. Doc. No. 13 at 20. The Plea Agreement obligates J&J Worldwide and its majority-owned subsidiaries, including the Defendant, to cooperate fully and truthfully in an ongoing criminal investigation. *Id.* ¶¶1, 16. As a result, J&J Worldwide will assume the burden of producing documents and making witnesses available to the government as the need arises. Accordingly, pursuant to the Plea Agreement, the government agrees not to criminally charge J&J Worldwide or its majority-owned subsidiaries (other than the Defendant) for the charged conduct. *Id.* ¶17. The Plea Agreement does not provide non-prosecution protection to any natural persons.

## I. SUMMARY OF THE OFFENSE

From at least November 2018 through at least March 26, 2021, the Defendant engaged in a conspiracy and fraud scheme to submit rigged and fake bids for subcontract work on U.S. military facilities in the Republic of Korea. The Defendant executed this scheme through the actions of two officers of the company—Hyuk Jin Kwon and Hyun Ki Shin. Mr. Kwon and Mr. Shin were indicted by a grand jury in the Western District of Texas for the same conduct underlying the charges against the Defendant. *See United States v. Kwon et al*, No. 22-CR-00049, Doc. No. 1 (W.D. Tex. filed Mar. 16, 2022).[1]

The Defendant is a subsidiary of J&J Maintenance Inc., which does business as J&J Worldwide Services and is based in Austin, Texas. During the relevant period, J&J Worldwide owned 51 percent of the Defendant, while Mr. Kwon owned the remaining 49 percent.

J&J Worldwide was the prime contractor for the U.S. Army Corps of Engineers on a contract to perform operation and maintenance support services at U.S. military facilities around

---

[1] Mr. Kwon and Mr. Shin, who are nationals of the Republic of Korea, remain beyond the territorial reach of the United States and have not appeared before the Court.

the world, including in the Republic of Korea (the "USACE Contract"). When performing "Service Order" work under the USACE Contract, J&J Worldwide frequently used subcontractors, including the Defendant. In order to use subcontractors, J&J Worldwide was required to obtain two or more bids to establish to the government that the bids for subcontract work were competitive.

When bidding for Service Order work under the USACE Contract, the Defendant, through Mr. Kwon and Mr. Shin, obtained rigged competitor bids and created the false appearance that those bids were competitive. The Defendant created this false appearance by exchanging bid information with competitor contractors, and even preparing premade, losing bids for competitor subcontractors to submit, thereby ensuring that the vast majority of Service Order work under the contract was awarded to the Defendant.

As a result of the Defendant's conduct, the government paid J&J Worldwide approximately $7,200,000 for subcontract work that was awarded to the Defendant under the USACE Contract. Moreover, the government paid non-competitive prices for the Defendant's subcontract work. Based on a cost-factor analysis conducted by the U.S. Army Corps of Engineers of subcontract work that was affected by the Defendant's bid rigging, the Department of Defense overpaid for the Defendant's rigged subcontract work by 98 percent. This means that of the $7,200,000 the government paid for subcontract work awarded to the Defendant, the government overpaid for that work by approximately $3,600,000.

## II.     LEGAL STANDARD

Rule 11(c)(1)(C) authorizes the United States to enter into plea agreements in which the parties agree that a particular sentence is the appropriate disposition of the case. *See* Fed. R. Crim. P. 11(c)(1)(C). Notwithstanding the agreement of the parties, a district court must still

evaluate the substantive reasonableness of the sentence by considering the applicable range under the Sentencing Guidelines and the relevant factors under 18 U.S.C. § 3553(a). *United States v. Gonzalez*, 62 F.4th 954, 959–60 (5th Cir. 2023). The Fifth Circuit "applies a rebuttable presumption of reasonableness to a properly calculated, within-guidelines sentence." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). Should a district court reject a Rule 11(c)(1)(C) agreement, the court must give the defendant an opportunity to withdraw the guilty plea. Fed. R. Crim. P. 11(c)(5); *accord United States v. Brown*, 898 F.3d 636, 639 (5th Cir. 2018).

### III.    SENTENCING GUIDELINES

As summarized in the table below, and explained in the subsequent paragraphs, the stipulated $5,000,000 fine is within the applicable sentencing guidelines range.

| | |
|---|---:|
| **§ 2R1.1 Offense Level (15 U.S.C. § 1)** | **15** |
| Base Offense, § 2R1.1(a) | 12 |
| Volume of Commerce > $1,000,000, § 2R1.1(b)(2) | +2 |
| Bid Rigging, § 2R1.1(b)(1) | +1 |
| **§ 2B1.1 Offense Level (18 U.S.C. § 1343)** | **25** |
| Base Offense, § 2B1.1(a)(1) | 7 |
| Fraud Loss $3,600,000, § 2B1.1(b)(1) | +18 |
| **Base fine, § 8C2.4(a), (d) (fine table; offense level 25)** | **$5,000,000** |
| Base culpability score, § 8C2.5(a) | 5 |
| Ten or more employees and participation of substantial authority personnel, § 8C2.5(b)(5) | +1 |
| Acceptance of responsibility, § 8C2.5(g)(3) | -1 |
| Adjusted culpability score | 5 |
| Multipliers for culpability score of 5, § 8C2.6 | Min. 1.0 / Max. 2.0 |
| **Fine range, § 8C2.7** | **$5,000,000 to $10,000,000** |

For organizational defendants, Chapter 8 of the Sentencing Guidelines determines the advisory criminal fine range. As relevant here, U.S.S.G. § 8C2.4(a) sets the company's base fine at the greater of the pecuniary loss or pecuniary gain from the offense, or the amount in a

4

delineated table of fines. The base fine in the table, in turn, depends on the offense level as calculated within the applicable Chapter 2 guidelines. *Id.* § 8C2.4(d).

Because the bid-rigging and fraud counts group as closely related counts under § 3D1.2, the applicable offense level for purposes of Chapter 8 depends on which guideline—§ 2R1.1 for bid rigging or § 2B1.1 for wire fraud—produces the highest offense level of the counts in the group. *See* § 3D1.3(a).

Section 2B1.1 produces the higher offense level of 25. A wire fraud conviction under 18 U.S.C. § 1343 corresponds with a base offense level of 7. *Id.* § 2B1.1(a). The offense level then increases based on the amount of financial loss caused by the Defendant. *See* 2B1.1(b)(1). The factual basis in the Plea Agreement reflects that the offense affected $7,200,000 in subcontract work paid for by the Department of Defense, and that the offense conduct caused the Department of Defense to overpay for that contract work by approximately $3,600,000. *See id.* § 6B1.4 cmt. ("[I]n determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information."). Accordingly, as stipulated between the Defendant and the United States, the loss from the offense is $3,600,000, which correlates with an 18-level increase under § 2B1.1(b)(1)(J). The offense level is therefore 25 under § 2B1.1.

Section § 2R1.1, the applicable guidelines for 15 U.S.C. § 1, produces an offense level of 15. The base offense under § 2R1.1(a) is 12. The bid-rigging conduct results in a one-level enhancement for "conduct involv[ing] participation in an agreement to submit non-competitive bids." *Id.* § 2R1.1(b)(1). The guidelines then call for level increases depending on the Defendant's volume of commerce affected by the bid rigging. *Id.* § 2R1.1(b)(2), (d)(3). Here, the volume of affected commerce affected by the bid rigging is stipulated to be $7,200,000, which is

5

the amount the Department of Defense paid for subcontract work affected by the Defendant's bid rigging during the charged offense period. This corresponds with a two-level increase under § 2R1.1(b)(2), resulting in an overall level of 15.

As explained above, for corporate fines, § 8C2.4(a) provides for a base fine equaling the greater of the amount in the fine table, or the loss or gain from the offense. An offense level of 25 corresponds to a table base fine of $5,000,000 under § 8C2.4(d), which is greater than the $3,600,000 loss suffered by the Department of Defense[2] or the amount gained by the Defendant or its corporate parent.[3]

Having calculated the base fine, the next step is to determine the Defendant's culpability score under § 8C2.5 and the corresponding fine range under § 8C2.6. Section 8C2.5 starts with a culpability score of 5. The guideline then provides for culpability enhancements and reductions. As relevant here, one culpability enhancement depends on the size of the company, and the authority of the culpable actors within the company. *Id.* § 8C2.5(b). Here, the Defendant employed ten or more individuals during the charged offense period, and officers with high-level authority within the company were principally responsible for the charged conduct, Doc. No. 13 ¶ 5(b), (g), warranting a one-level enhancement under § 8C2.5(b)(5). But because the Defendant accepted responsibility for its conduct by agreeing to plead guilty, the company qualifies for a one-level reduction for acceptance of responsibility under § 8C2.5(g)(3). This results in an

---

[2] Section 2R1.1 has special instructions for fines for organizations. Specifically, for bid-rigging offenses, it instructs courts to "use 20 percent of the volume of affected commerce" in "lieu of the pecuniary loss under" Section 8C2.4(a)(3). U.S.S.G. § 2R1.1(d)(1); *see id.* § 8C2.4(b) (providing "that if the applicable offense guideline in Chapter Two includes a special instruction for organizational fines, that special instruction shall be applied, as appropriate."). Here, 20 percent of the volume of affected commerce is $1,440,000. But the base fine from the § 8C2.4 table is greater than the in-lieu-of-loss amount under § 2R1.1.

[3] At most, the gain to Defendant or its corporate parent would be $3,600,000.

overall culpability score of 5 for the Defendant, which under § 8C2.6 reflects a minimum and maximum multiplier of 1.0 to 2.0 of the base fine. The fine range therefore is $5,000,000 to $10,000,000.

Accordingly, the fine amount of $5,000,000 set forth in the Plea Agreement is within the applicable guideline range and falls within a rebuttable presumption of reasonableness. *See Cooks*, 589 F.3d at 186.

## IV.  THE RESOLUTION IS SUBSTANTIVELY REASONABLE

In evaluating the reasonableness of a Rule 11(c)(1)(C) plea agreement, districts courts also consider the substantive requirements of 18 U.S.C. §§ 3553(a) and 3572(a). Here the key terms of the resolution—a $5,000,000 fine and $3,600,000 restitution—are reasonable under relevant statutory factors.

The $5,000,000 fine in the Plea Agreement is at the low end of the calculated fine range under Chapter 8. There is good reason for this Court to impose a fine at the low end of the guidelines range. In considering the nature and circumstances of the offense, *id.* § 3553(a), the Defendant's conduct caused considerable financial harm to the Department of Defense. Weighing against the harm, however, is the fact that the Defendant was the first to accept responsibility and plead guilty in the government's ongoing investigation. Moreover, the Defendant will be paying $3,600,000 in restitution in addition to the $5,000,000 fine. The combined $8,600,000 that the Defendant agreed to pay under the Plea Agreement reflects a full amount of the estimated loss to the government and estimated gain to the Defendant, plus a financial penalty that significantly exceeds the gain. This meets the need to provide a sentence that adequately deters others who would seek to defraud the government. *See id.* § 3553(a)(2)(B). Indeed, counsel for the Defendant has represented to the Court and the

government that the fine and restitution "represent all – virtually all of the current assets" of the Defendant. Plea Hearing Tr. at 26:22–23.

In sum, the agreed upon sentence in the Plea Agreement makes the government whole and meaningfully punishes the Defendant for the conduct, thereby deterring other bad actors, but it also credits the Defendant for accepting responsibility.

V.    PROBATION

With respect to probation, the Plea Agreement does not impose a term of probation. Under 18 U.S.C. § 3561(c)(1), a court may impose a term of probation of at least one year, but not more than five years. The United States does not believe that probation is necessary here when such a sentence will be unnecessary to secure the payment of restitution or a fine. *See* U.S.S.G. § 8D1.1(a)(1), (2). The Defendant has agreed to pay both the $5,000,000 fine and $3,600,000 restitution in full before the fifteenth day after the day of judgment, *see* Doc. No. 13 ¶12, meaning that the sentence will be satisfied within a matter of weeks after judgment. Additionally, because the payment of the fine and restitution represents the assets of the Defendant, there is a high degree of likelihood that the Defendant will not be able to engage in any future criminal conduct. *Id.* § 8D1.1(6). Thus, the imposition of probation is unlikely to further the purposes of sentencing as discussed under 18 U.S.C. § 3553(a)(2). *See id.* § 8D1.1(a)(8). Moreover, J&J Worldwide and its majority-owned subsidiaries (to include the Defendant) have agreed to cooperate with U.S. law enforcement in an ongoing investigation, meaning that for all practical purposes, the Defendant will be cooperating with U.S. authorities going forward. Given these facts, the United States does not believe the imposition of probation in this case is necessary to achieve the statutory purposes of 18 U.S.C. § 3553(a). Nevertheless,

the Court may reject the government's recommendation and decide to impose probation without voiding the Plea Agreement. *See* Doc. No. 13 ¶12(b).

## VI.     CONCLUSION

The United States recommends that the Court sentence the Defendant in accordance with the Rule 11(c)(1)(C) Plea Agreement, to a fine in the amount of $5,000,000, a special assessment of $800, restitution in the amount of $3,600,000, and no probation imposed. This sentence is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §§ 3553(a) and 3572(a).

Respectfully Submitted,

/s/ Daniel E. Lipton
DANIEL E. LIPTON
DC Bar No. 1022938
DANIEL P. CHUNG
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Section
450 5th Street, N.W.
Washington DC 20530
Tel: (202) 598-2438
daniel.lipton@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on May 23, 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to all parties in this action.

                                                        */s/ Daniel E. Lipton*
                                                        Daniel E. Lipton
                                                        Trial Attorney
                                                        U.S. Department of Justice
                                                        Antitrust Division