UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case Number 1:23-CR-00073 RP |
| | § | |
| J&J KOREA, INC. | § | |

## DEFENDANT'S SENTENCING MEMORANDUM

### I.     Introduction

Defendant J&J Korea, Inc. ("JJK"), by and through its undersigned counsel, respectfully submits this memorandum in support of the Plea Agreement, (ECF No. 13), and the recommended sentence.  The Plea Agreement was entered into by the parties under Fed. R. Crim. P. 11(c)(1)(C) and provides that, if the Court accepts the plea agreement, it impose the following sentence upon JJK: a fine of $5,000,000 and a restitution money judgment of $3,600,000 for a total financial payment of $8.6 million (as well as the special assessment of $400 per count (here $800)) for a total of $8,600,800.  The agreed sentence set forth in the Plea Agreement is appropriate because:

(1)     JJK and its majority-shareholder, J&J Maintenance, Inc. ("JJW") conducted a thorough investigation, cooperated immediately with the federal investigation, and identified those who engaged in criminal conduct;

(2)     The United States Department of Defense will be made whole by a full repayment of the overcharge, as calculated by the Department of Justice, through the restitution component of the recommended sentence;

(3)      The agreed criminal fine is within the parameters of the applicable Sentencing Guidelines; and

(4)      The malefactors in this criminal matter, JJK's minority shareholder Hyuk Jin Kwon and its general manager Hyun Ki Shin have been indicted by the U.S. Department of Justice, *see United States v. Hyuk Jin Kwon et. al.*, No. 1:22-cr-49 (W.D. Tex., Mar. 16, 2022), in part based on cooperation by both JJK and JJW.

## II.      Investigation, Immediate Cooperation and Identification of Responsible Parties

JJK has taken full responsibility for its actions and provided the government with valuable, prompt, and thorough cooperation since becoming aware of the investigation. Its majority shareholder, JJW, authorized a full investigation of the then-alleged conduct upon receipt of the government's June 3, 2021 grand jury subpoena (the "Subpoena") and immediately began cooperating with the Department of Justice. Indeed, during the first telephone conference with Department of Justice attorneys on June 8, 2021, outside counsel pledged to investigate the allegations comprehensively and present its findings regularly—beginning with its first report two weeks later, followed by its first document production on July 1, 2021.

Since then, the companies have worked cooperatively with the Department of Justice, presenting key findings frequently—often weekly—and producing voluminous records and evidence that helped, in part, to develop the government's case. Outside vendors collected and reviewed nearly one million documents extracted from across the companies' server and from key custodian devices.  Ultimately, more than 200,000 documents were produced to the government across ten rolling productions. Outside counsel conducted 19 interviews of key witnesses, including the companies' leadership, and other individuals with knowledge of the underlying facts.

JJK's and JJW's productions and reports were provided to improve the government's factual understanding so it could resolve its investigation as efficiently as possible, whatever the result.

Although the Covid-19 pandemic and strict Korean travel regulations prevented counsel from traveling to Korea in order to meet senior JJK executives in person, those individuals were interviewed via Zoom.

**III.   The Concurrent Review of Compliance Programs and Roll Out of Enhancements**

In addition to initiating a prompt and thorough investigation into the subjects raised in the Subpoena, there were immediate and concurrent steps taken to review internal compliance infrastructures and implement effective enhancements to these policies and procedures. JJW— the majority partner of the joint venture partnership with JJK—spearheaded this effort, utilizing experienced U.S. counsel. As a result of this effort, new policies, procedures, and a compliance infrastructure were created that flow directly to JJK and govern JJK's operations in Korea. These enhancements specifically target the kind of conduct revealed here so that it cannot and will not happen again.

For example, immediately upon receipt of the Subpoena, JJW implemented several targeted measures, applicable both to JJK and JJW's performance in Korea, in order to ensure that the alleged conduct did not continue pending further investigation. These measures included:

- Ceasing all recommendations of JJK for subcontract awards to the Government end-user, instead providing 2-3 recommended subcontractors and permitting each end-user to select the best subcontractor;

- Facilitating a large pool of new companies to compete for subcontracts, rather than relying on the same entities that were the subject of the Government's investigation;

- Ousting JJK senior management from their operational leadership positions, including ousting the indicted co-conspirator from his role as Representative Director; and

- Terminating all JJW employees in Korea who had any involvement in JJK's operations, regardless of their culpability.

IV.   **The Plea Terms Are Fully Consistent With the Violation and Ensuing Full Cooperation**

In light of JJK's cooperation efforts as well as the enhanced compliance program and oversight from the majority shareholder, the agreed terms set forth in JJK's Plea Agreement—specifically, a fine of $5,000,000 and $3,600,000 in restitution, both payable in full before the fifteenth (15th) day after the date of judgment—represent a reasonable sentence fully consistent with the underlying violation based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

First, the restitution figure is appropriate because, as set forth in the Plea Agreement, it reflects the government's calculation of "the loss to the United States and the gain to the Defendant from the offenses." (Doc. No. 13, p. 7). Thus, should the Court accept and impose the restitution contemplated in these terms, the United States Department of Defense will be made whole by a full repayment of the overcharge.

Second, a fine amount of $5,000,000 falls well within the applicable guideline range under the United States Sentencing Guidelines ("U.S.S.G."). As stated in the Plea Agreement, JJK "was awarded approximately $7,200,000 in service order work affected by bid rigging, price fixing, and fraud" (Doc. No. 13, p. 7).  As calculated in the Plea Agreement, the base fine for an organization with an offense level of 25 (like JJK) is $5,000,000.  Based on the Plea Agreement's calculations, JJK's culpability score under the U.S.S.G. is 5, resulting in a multiplier range of 1.0 – 2.0.  Accordingly, the recommended fine of $5,000,000 is at the low end of the guidelines.

Thirdly, a sentence of probation is unwarranted in this case.  The Plea Agreement requires JJK to pay the fine, restitution, and special assessment within 15 days, negating the need

for probation.  The criminal penalties in this case will essentially bankrupt JJK and will likely result in its liquidation and closure.

Finally, the proposed sentence is reasonable based on all relevant factors set forth in 18 U.S.C. §§ 3553(a) and 3572(a), as well as the policy considerations set forth in U.S.S.G. § 8C2.5. In particular, the sentence reflects the seriousness of JJK's offense and affords adequate deterrence while protecting the public from further crimes, but it also balances the fact that JJK is a first-time offender, that there was neither a vulnerable victim nor any threat of non-pecuniary loss, and that the organization took measures against directors responsible for the offense to prevent future recurrence. In addition, there are no factors under U.S.S.G. § 8D1.1 present in this matter which would require the imposition of probation, particularly because an effective compliance and ethics program has already been implemented, and because funds have already been made available to pay all imposed penalties, which it agreed to do exactly 15 days after the judgement.  Specifically, JJW has agreed to guarantee payment to the United States of all criminal fines and restitution.  The recommended sentence will, essentially, leave JJK with no monetary assets, and JJW will pay a substantial portion of the restitution and the fine on JJK's behalf.  Thus, no period of probation is necessary in this case because it can and will pay the fine and make full restitution within 15 days.  Further, both JJK and JJW are committed to a comprehensive and tailored compliance program.

## V.      There are No Un-Charged Culpable JJK Individuals

There are no un-charged culpable individuals at JJK, and the Plea Agreement is not intended to avoid individual criminal charges.  In fact, the government has charged both the minority shareholder of JJK, Hyuk Jin Kwon, and a manager of JJK, Hyun Ki Shin, who

conceived of and executed the bidding and wire fraud scheme. *See United States v. Hyuk Jin Kwon et. al.*, No. 1:22-cr-49 (W.D. Tex., Mar. 16, 2022).

## VI.      The Release for JJW and Related Parties is Appropriate

The Plea Agreement contemplates a release for any potential liability for JJW, the majority shareholder, conditioned on (1) satisfaction of all monetary fines and restitution on behalf of JJK; and (2) cooperation in other investigations. This is perfectly appropriate. The government's investigation did not conclude that there was any criminal conduct by JJW, and the release provided by the government to JJW provides meaningful benefits to the government. First, it ensures that the government will be paid all of the monetary penalties. Second, it requires JJW to cooperate in potential other investigations of criminal conduct.

## VII.     Conclusion

Both JJK and JJW have worked closely with the Department of Justice since the inception of its investigation, and JJK has accepted full responsibility for its conduct. For that reason, and those discussed in more detail above, JJK respectfully urges the Court to accept the pending plea agreement.

**DATED:** May 23, 2023

Respectfully submitted,

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

*/s/  Jason C. Hoggan*

Jason C. Hoggan
Texas Bar No. 24083188
jhoggan@sheppardmullin.com
2200 Ross Avenue, 20th Floor
Dallas, Texas  75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7401

-and-

Thomas J. Dillickrath *[pro hac vice]*
DC Bar No. 483710
tdillickrath@sheppardmullin.com
A. Joseph Jay, III *[pro hac vice]*
DC Bar No. 501646
jjay@sheppardmullin.com
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to all parties in this action.

*/s/ Jason C. Hoggan*
Jason C. Hoggan